UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11648-RWZ

XIAN MING WU

v.

CITY OF NEW BEDFORD *et al.*

MEMORANDUM OF DECISION

September 11, 2013

ZOBEL, D.J.

Plaintiff Xian Ming Wu brought this civil rights action in the Bristol Superior Court against the City of New Bedford ("the City"); its former mayor, Scott Lang; its former Chief of Police, Ronald Teachman; and its police officer Jeremy DeMello, whose interactions with plaintiff gave rise to this suit. Defendants removed the case to this court and filed a motion under Federal Rule of Civil Procedure 12(c) for partial judgment on the pleadings. See Docket # 7. Plaintiff responded with a motion to amend the complaint to "clarify certain aspects of the pleadings" and "more fully set out the basis for the legal claims and . . . the factual context of the allegations." Docket # 14, at 1. Defendants opposed in part the motion to amend the complaint; their opposition substantially tracks the arguments raised in their Rule 12(c) motion.

Both the original complaint and the proposed amended complaint allege that DeMello used excessive force to arrest plaintiff without probable cause, and that

plaintiff was then maliciously prosecuted for resisting arrest, disorderly conduct, and assault and battery on a police officer. The criminal charges were apparently resolved in plaintiff's favor.

The proposed amended complaint proceeds in seven counts, five against the individual defendants (Counts I, II, III, V, and VI) and two against the City (Counts IV and VII). As to the individual defendants, Counts I and II charge DeMello, Lang, and Teachman under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, § 11I, for violating plaintiff's Fourth and Fourteenth Amendment rights. DeMello allegedly violated plaintiff's rights by arresting him with excessive force and without probable cause; Lang and Teachman allegedly "instilled" a "pervasive culture" of police misconduct, and "support[ed]" plaintiff's prosecution. Docket # 14, Ex. 1 (Am. Compl.), ¶ 31. Count III brings a state common law claim for malicious prosecution against the individual defendants, on the ground that "[a]cting jointly Defendants caused criminal charges to be brought and, in the case of Lang and Teachman[,] to be continued" against plaintiff with malice and without probable cause. Am. Compl., ¶ 38. Count V proceeds only against DeMello, alleging the intentional tort of assault and battery. Finally, Count VI asserts a state common law claim for false arrest and abuse of process against DeMello for arresting and charging the plaintiff and against Lang and Teachman for supporting and ratifying DeMello's actions.

As to the City, Count IV seeks relief under Mass. Gen. Laws ch. 258, § 2, either for DeMello's negligence during the arrest or for Lang's, Teachman's, and the City's negligence in failing to properly train and supervise DeMello. Count VII is another claim

under 42 U.S.C. § 1983, claiming that the City's policies and customs—in particular, its "tolerance and ratification and endorsement of police misconduct"—caused the violation of plaintiff's Fourth and Fourteenth Amendment rights. Am. Compl., ¶ 57.

Defendants oppose plaintiff's motion to amend the complaint insofar as the amended complaint alleges claims against Lang, Teachman, and the City. They correctly argue that the amended complaint fails to state any claim against these defendants, and so the motion to amend is futile as to those putative claims. See Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009). In deciding whether plaintiff has stated a claim, I accept as true all factual allegations contained in the complaint and draw all reasonable inferences in plaintiff's favor. Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 52-53 (1st Cir. 2013). However, I do not credit conclusory assertions that lack factual enhancement. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To state a claim, plaintiff must plead facts showing it is plausible, not merely possible, that defendants have acted unlawfully. Id.

I begin with the claims against Lang and Teachman. Counts I and II against these defendants fail because plaintiff has not alleged facts showing supervisory liability.[1] It is well established that government officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Iqbal, 556 U.S. at 676. Instead, supervisory liability normally arises in one of two ways:

---

[1] The MCRA is mostly "coextensive with 42 U.S.C. § 1983," except that it does not require state action and does require threats, intimidation, or coercion. See Batchelder v. Allied Stores Corp., 473 N.E.2d 1128, 1131 (Mass. 1985). The standard for supervisory liability under the MCRA is thus apparently the same as under § 1983. See Priestly v. Doucette, 2 Mass. L. Rptr. 253, 1994 WL 879691, at *3-4 (Mass. Super. May 31, 1994).

either (1) the supervising official personally violates the plaintiff's rights, or (2) the official shows deliberate indifference to the plaintiff's constitutional rights in deficiently hiring, training, or supervising his subordinates. Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009). The first prong is not at issue here, as plaintiff does not allege that either Lang or Teachman was personally involved in his arrest or the use of excessive force. As to the second prong, plaintiff does not assert any specific failures by Lang or Teachman in how they hired, trained, or supervised DeMello. Instead, he generally avers that Lang and Teachman "instilled" a "pervasive culture" of police misconduct at the New Bedford Police Department. Am. Compl., ¶ 31. Specifically, he faults them for their:

> reckless disregard for Plaintiff['s] constitutional rights by the long[-]standing policy and practice of failing to investigate complaints of misconduct, as in this very case; failure to discipline officers in this and prior cases; condoning of beatings of citizens; instilling confident belief in the officers of the New Bedford Police Department that any unlawful violations will be not only tolerated by the City and its leaders, but supported and ratified by false reports and support for false and abusive prosecutions.

Am. Compl., ¶ 31. These conclusory assertions of pervasive wrongdoing, of course, are not enough to state a claim. See Iqbal, 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); id. at 680-81 (rejecting allegations that defendants "knew of, condoned, and willfully and maliciously agreed to" their subordinates' unlawful conduct). Plaintiff provides almost no details to support these conclusory assertions. He points to only two prior incidents in which Lang and Teachman allegedly failed to investigate or

discipline police misconduct. Specifically, plaintiff describes two other complaints that charged Lang and Teachman with supervisory liability for police misconduct that occurred in 2007 (two years before the events at issue here). Am. Compl., ¶ 20-21. Those unproven complaints are "merely consistent with" plaintiff's theory that Lang and Teachman were deliberately indifferent to police misconduct. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 557 (2007))."[G]iven more likely explanations," they are not enough to make plaintiff's theory plausible. Id. at 681; see Strauss v. City of Chicago, 760 F.2d 765, 768-69 (7th Cir. 1985) ("People may file a complaint for many reasons, or for no reason at all."). Plaintiff's additional allegations that Lang and Teachman failed to properly investigate his own complaints is no more helpful. See Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 95 n.11 (1st Cir. 1994) (failure to properly investigate a single complaint about police misconduct does not show deliberate indifference). Finally, to the extent plaintiff seeks to hold Lang and Teachman liable on Counts I and II for their role in his prosecution, he has failed to allege facts showing how Lang and Teachman "assisted and endorsed the prosecution by knowing and intentional acts." Am. Compl. ¶ 35.

Count III (malicious prosecution) and Count VI (false arrest and abuse of process) likewise fail to state any claim against Lang or Teachman. Count III merely asserts that "[a]cting jointly Defendants caused criminal charges to be brought and, in the case of Lang and Teachman[,] to be continued against [plaintiff] without probable cause and with malice." Am. Compl. ¶ 38. It alleges no facts showing how either Lang or Teachman had any role in plaintiff's prosecution. Count VI likewise states only that

Lang and Teachman "supported and ratified the prosecution and abuse of process" and "ratified and endorsed and maintained the illegal prosecution of the plaintiff." Am. Compl. ¶ 54. It provides no facts to show what role these defendants themselves played in the proceedings. Cf. Iqbal, 556 U.S. at 678-79, 680-84.

Plaintiff's claims against the City are equally deficient. Count IV is brought under Mass. Gen. Laws ch. 258, § 2, which makes public employers liable for the negligence of their employees. Before suing under that statute, a plaintiff must first present his claim in writing to the public employer. Mass. Gen. Laws. ch. 258, § 4. As pleaded, Count IV apparently invokes two theories of liability: that the City is liable for DeMello's negligence in making the arrest, Am. Compl. ¶¶ 41-45, and that it is liable for the negligence of its employees in failing to properly train and supervise DeMello, Am. Compl. ¶¶ 46. The former theory, however, was not put forward in the written claim plaintiff presented to the City. His letter to the City nowhere accuses DeMello of negligence; on the contrary, it indicates that DeMello acted intentionally, in which case the City would not be liable for his actions. See Docket # 18-2; Mass. Gen. Laws ch. 258, § 10(c) (exempting public employers from liability for the intentional torts of their employees). As the presentment letter fails to raise any negligence by DeMello, plaintiff cannot proceed here on that theory. See Tambolleo v. Town of West Boylston, 613 N.E.2d 127, 131 (Mass. App. Ct. 1993). That leaves only plaintiff's second theory, negligence in training and supervision. But plaintiff has not alleged any identifiable deficiency in the City's training or supervision of its police officers; he only asserts in a conclusory fashion that Lang, Teachman, and the City "acted negligently in their failure

to properly train, supervise and discipline Officer DeMello." Am. Compl. ¶ 47. That will not do.

Finally, Count VII asserts liability against the City under 42 U.S.C. § 1983, claiming the City's unlawful "policies and customs" led to the violation of plaintiff's constitutional rights. Am. Compl. ¶ 57; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). To state such a claim, plaintiff must allege facts showing that an official policy, practice, or custom followed by the City was responsible for the deprivation of his federal rights. See Monell, 436 U.S. at 690. No such facts are alleged in the amended complaint. Plaintiff asserts that before he was arrested, "there was a pattern of New Bedford Police Department officers using excessive force to arrest people without probable cause," Am. Compl. ¶ 59; but he alleges no facts to support that conclusion other than the two previous complaints described above. The mere existence of those two unsubstantiated complaints, regarding incidents that occurred two years before plaintiff was injured, does not raise a plausible inference that New Bedford's regular practice was to make arrests with excessive force and without probable cause. Cf. Kinan v. City of Brockton, 876 F.2d 1029, 1034-35 (1st Cir. 1989) (upholding exclusion of evidence regarding cases that settled because such cases "cannot be used to prove custom or practice"). Plaintiff's additional allegations about the single incident that he suffered are also not enough to plausibly show an ongoing policy, practice, or custom. See Sonia v. Town of Brookline, 914 F. Supp. 2d 36, 46-47 (D. Mass. 2012) ("[I]t is extremely difficult to sustain [municipal liability] based on a single incident of misconduct.").

To the extent plaintiff seeks to base liability on the City's failure to train its officers correctly, his claim fails because he has not "identified" any specific "deficiency in [the] city's training program . . . closely related to the ultimate injury." City of Canton v. Harris, 489 U.S. 378, 391.

Alternatively, plaintiff argues that the City is liable because it "ratif[ied]" DeMello's alleged wrongdoing and so adopted his actions its official policy.[2] Cf. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."). To support this argument, plaintiff alleges that the City received "overwhelming eyewitness evidence of unlawful misconduct by Officer DeMello," but that it nevertheless failed adequately investigate the incident, failed to discipline DeMello, allowed criminal charges to be filed against plaintiff, and defended DeMello's actions when plaintiff complained to the Massachusetts Commission Against Discrimination. Am. Compl., ¶ 4; see id. ¶¶ 22-26. Although troubling, those allegations are not enough to plausibly show that the City knew DeMello had violated plaintiff's rights and chose to affirmatively ratify his misconduct. The City is not liable under 42 U.S.C. § 1983 just because plaintiff disagrees with the results of its investigation into the incident. See Santiago v. Fenton, 891 F.2d 373, 382 (1st Cir. 1989) ("[W]e cannot hold that the failure of a police

---

[2] In fact, plaintiff alleges that the City's "policies and customs" included "the tolerance and ratification and endorsement of police misconduct and failure to train officers, investigate complaints, discipline officers who engage in violations of civil rights and instill in the department a culture of unlawfulness" across the board. Am. Compl., ¶ 57. But the only facts plaintiff alleges to show that the City ratified police misconduct are (1) the existence of the two complaints discussed above, and (2) the facts of the incident he himself suffered.

department to discipline in a specific instance is an adequate basis for municipal liability under Monell."); Kibbe v. City of Springfield, 777 F.2d 801, 809 n.7 (1st Cir. 1985); Barker v. City of Boston, 795 F. Supp. 2d 117, 124-25 (D. Mass. 2011).[3]

Plaintiff's motion to amend the complaint (Docket # 14) is therefore ALLOWED IN PART and DENIED IN PART. The proposed amended complaint shall become the active complaint in this matter, but it shall be construed to raise only the claims asserted against DeMello and not those asserted against Lang, Teachman, or the City.

Defendants' motion for partial judgment on the pleadings (Docket # 7) is DENIED AS MOOT.

    September 11, 2013                     /s/Rya W. Zobel
           DATE                                     RYA W. ZOBEL
                                                         UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff also notes that DeMello's supervisors approved DeMello's arrest report despite "extensive civilian eyewitness evidence of unlawful conduct and false reports by DeMello." Am. Compl. ¶ 60. But he alleges no facts to show that these supervisors were authorized policymakers for the town, or that they ratified DeMello's alleged misconduct on behalf of the town by approving his arrest report.